UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Princeton Global Management Ltd., Princeton ) <br> Economics International Ltd., and Martin A. ) <br> Armstrong, ) <br> ) <br> Defendants. ) <br> _____ ) | 99 CV 9669 (PKC) <br><br> USDS SDNY <br> DOCUMENT <br> ELECTRONICALLY FILED <br> DOC #: _____ <br> DATE FILED: 6/24/08 |

## [PROPOSED] JUDGMENT AND CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT MARTIN A. ARMSTRONG

On September 13, 1999, Plaintiff, U.S. Commodity Futures Trading Commission ("Plaintiff" or "CFTC") filed a Complaint for a permanent injunction and other relief pursuant to Section 6c of the Commodity Exchange Act ("Act"), as amended, 7 U.S.C. §13a-1 (1994), against Martin A. Armstrong ("Armstrong" or "Defendant").

### I. CONSENTS AND AGREEMENTS

1. To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits or any further judicial proceedings, the CFTC, the Defendant, and the Court-appointed Receiver consent to the entry of this *Judgment and Consent Order of Permanent Injunction and Other Equitable Relief Against Defendant Martin A. Armstrong* ("Order").

2. Defendant agrees that he has read this Order and agrees to this Order voluntarily and that no promise or threat has been made by the CFTC, or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

1

3. Defendant acknowledges service of the Summons and Complaint on him.

4. Defendant admits that this Court has jurisdiction over him and the subject matter of this action.

5. Defendant admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1 (1994). In addition, Defendant waives: (a) all claims that he may possess against the CFTC and the Court-appointed Receiver and his attorneys and accountants as a result of any past, present, or accrued cause of action under the Equal Access to Justice Act, 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000); (b) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing any other relief; (c) any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to pursue reimbursement of attorneys' fees or other fees, expenses, or costs related to or arising from the action; (d) all rights of appeal from this Order; and (e) the entry of findings of fact and conclusions of law.

6. This Order represents the final and complete agreement between the CFTC and the Defendant, and it shall be finally binding upon and inure to the benefit of the parties hereto, the Court-appointed Receiver and his attorneys and accountants and their respective heirs, personal representatives, successors and assigns. This Order is in full settlement and satisfaction of and releases any and all claims, demands, rights, and causes of action of whatsoever kind and nature, whether currently known or unknown, foreseen or unforeseen, including without limitation any other cause of action, that Defendant in any capacity may now have or hereafter acquire against the CFTC, its attorneys, agents, servants, and employees, and the Court-appointed Receiver and his attorneys and accountants and their respective heirs, personal representatives, successors and assigns arising from and by reason of:

2

   (a) the same subject matter that gave rise to the above-captioned action, including all litigation brought by Defendant or any entity to which Defendant is in any way connected, now pending in the United States Court of Appeals for the Second Circuit and/or the United States District Court for the Southern District of New York;

   (b) any other subject matter, including any claim for relief under any pending or successor lawsuit for any actions or failures to act or upon any other basis arising before the date of this Settlement or in relation to the complying with the terms of this Settlement;

   (c) any other claim for monetary, non-monetary, or equitable relief before any federal or state court or administrative tribunal for any actions or failures to act or upon any other basis arising before the date of this Settlement or in relation to the complying with the terms of this Settlement; and/or

   (d) any claim for legal or equitable relief against the CFTC, its employees or ex-employees, successors, or assigns and the Court-appointed Receiver and his attorneys and accountants in any forum whatsoever for any actions or failures to act or upon any other basis for any facts before the date of this Settlement or in relation to the complying with the terms of this Settlement.

Defendant agrees that this provision should be construed liberally and broadly in favor of the CFTC, its employees, and the Court-appointed Receiver and his attorneys and accountants and their respective heirs, personal representatives, successors and assigns. Nothing in this Order, however, shall prevent Defendant from prosecuting the Petition for Certiorari filed with the Supreme Court on or about March 19, 2007 (Dkt. No. 06-1278). The Defendant and his counsel confirm that they have specifically considered this waiver and release and agree that this waiver and release is made knowingly and voluntarily and is a fair and appropriate element of the resolution of this case.

  7. Paragraph 6 shall not be construed to prohibit any litigation by Defendant Armstrong in the criminal case, *United States of America v. Martin Armstrong,* 99 Crim 997 (JFK) (the "Criminal Judgment"), including the prosecution of any appeals, motions for bail pending appeal, motions or applications to reduce his criminal sentence or for credit for time

3

served, or any other motion, application or petition that Defendant may wish to present in that case.

8.  Defendant agrees that upon entry by the Clerk of Court of this Judgment and Consent Order pursuant to Section II below, Defendant (i) shall file no further discovery, motions, objections, applications and/or claims in the Civil Enforcement Action, (ii) shall withdraw all motions, objections, applications and claims pending in the Civil Enforcement Action (including any appeals of decisions in this Civil Enforcement Action other than in connection with the pending petitions for certiorari in the habeas corpus action or in connection with the Criminal Judgment, (iii) shall not object to, oppose or appeal confirmation of a Plan of Distribution, and (iv) shall take no action (including, without limitation, initiating discovery) that may hinder, delay or oppose actions of the CFTC or Receiver in the Civil Enforcement Action including their actions to seek the approval and/or confirmation of a Plan of Distribution as provided in paragraph 12 below.

9.  Defendant agrees to provide immediate notice to this Court and the Commission by certified mail of any bankruptcy proceeding filed by, on behalf of, or against him.

10.  Defendant agrees to comply with the policy of the CFTC that neither he nor any of his agents or employees under his authority or control, contractors or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendant's (a) testimonial obligations; or (b) right to assert factual or legal positions in other proceeding to which the CFTC is not a party. Defendant shall take all necessary steps to ensure that all of his

4

agents, servants, employees, contractors and attorneys understand and comply with policy as set forth in this agreement.

11. By consenting to this Order, Defendant neither admits nor denies the allegations contained in the Complaint except as otherwise set forth herein.

12. Defendant agrees (a) that the *pro rata* distribution methodology and the *pro rata* percentages adopted and approved in connection with this Court's Order Authorizing the Receiver's Motion for an Interim Distribution of Funds Frozen in RNYSC Account 4500R to the Princeton noteholders, dated January 4, 2004, are fair and equitable, and (b) that the remaining assets enumerated in Exhibit 1 ( attached hereto) shall be distributed in accordance with a plan approved by the Court or pursuant to agreement of the parties, which plan, for purposes of future distributions. may include the same or a similar *pro rata* distribution methodology and the same *pro rata* percentages as prior interim distributions.

13. Defendant waives service of this Order and agrees that entry of this Order by the Court and the filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.

14. Defendant agrees not to oppose the enforcement of this Order on the grounds, if any exist, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

15. Defendant acknowledges that no promise or representation has been made by the CFTC or any member, officer, employee, agent, or representative of the CFTC or by the Court-appointed Receiver or his counsel with regard to any criminal liability that may have arisen from the facts underlying this action, or immunity from any such criminal liability. The CFTC agrees not to take any further action based on the allegations in the Complaint in this action, nor

5

otherwise seek any additional remedy for the conduct alleged in the Complaint other than provided in or allowed by this Final Judgment and Consent.

16.     Defendant agrees that the CFTC may present this Order to the Court for signature and entry without further notice.

## II. ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

The Court, being fully advised, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court, therefore, directs the entry of a permanent injunction and ancillary equitable relief pursuant to §6c and §6d of the Act, 7 U.S.C. §13a-1 (1994), as set forth herein.

### NOW THEREFORE, IT IS ORDERED THAT:

1.      Defendant shall be permanently restrained, enjoined and prohibited from directly or indirectly:

   A.      Cheating or defrauding or attempting to cheat or defraud other persons, or willfully making or causing to be made to other persons false reports or statements thereof, or willfully entering or causing to be entered for other persons false records thereof, or willfully deceiving or attempting to deceive other persons in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery are or may be used for:

   (1)   hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof;

   (2)   determining the price basis of any transaction in interstate commerce in such commodity; or

6

  (3)  delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof

in violation of Sections 4b(a)(i)-(iii) of the Act, 7 U.S.C. §§6b(a)(i)-(iii) (1994);

  B.  Making use of the mails or other means or instrumentality of interstate commerce to solicit, accept or receive funds from members of the public to participate in a commodity pool formed and operated for the purpose of trading commodity futures contracts on contract markets without being registered with the Commission as a commodity pool operator ("CPO"), and/or to engage in the business for compensation or profit of advising others as to the value of the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market without being registered with the Commission as a commodity trading advisor ("CTA"), all in violation of Section 4m(l) of the Act, 7 U.S.C. §6m(1) (1994); and

  C.  While acting as a CTA and/or CPO, directly or indirectly using the mails or other instrumentalities of interstate commerce –

  (A)  to employ devices, schemes or artifices to defraud customers; or

  (B)  to engage in transactions, practices, or course of business conduct that operates as a fraud or deceit upon customers

in violation of Sections 4*o*(I)(A) and (B) of the Act, 7 U.S.C. §§6*o*(l)(A) and (B) (1994).

2.  Defendant is permanently restrained, enjoined, and prohibited from directly or indirectly:

  A.  trading on or subject to the rules of any registered entity as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

  B.  engaging in, controlling or directing the trading for any commodity futures, security futures, options, options on futures, or foreign currency

7

options account for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

C. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. §4.14(a)(9) (2004), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. §4.14(a)(9) (2004).

3. The injunctive provisions of this Order shall be binding upon Defendant, upon any person insofar as he or she is acting in the capacity of agent, servant, employee or attorney of Defendant, and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Defendant.

**IT IS FURTHER ORDERED THAT:**

4. Restitution: Defendant Armstrong shall fully satisfy his restitution obligation in this matter by transferring to the Court-appointed Receiver any and all right, title and interest that he possesses, if any, in the property and assets listed in **Exhibit 1** to this Order, and he shall hereafter forever waive any claim against such property and assets listed in Exhibit 1 to this Order. The property and assets listed in **Exhibit 1** shall be applied and distributed pursuant to an Order of the Court in satisfaction of Defendant Armstrong's restitution obligation.

Defendant's remaining restitution obligations, if any, under the Criminal Judgment entered in *United States v. Armstrong* shall be satisfied from the property and assets over which the Court-appointed Receiver took custody pursuant to prior orders entered by the court and listed in **Exhibit 1**, including all interest earned on those assets. If any restitution is still due and owing under the Criminal Judgment, Defendant waives all of his rights and claims to the

property and assets listed in **Exhibit 1,** including interest accrued thereon, currently in the Court-appointed Receiver's custody or possession pursuant to the Court's prior orders, and Armstrong shall receive credit towards satisfaction of the Criminal Judgment for any future distributions made be the Court-appointed Receiver.

5. Cooperation: Defendant shall cooperate with the CFTC and the Court-appointed Receiver by executing any deeds, affidavits and other documents to disclaim any right, title or interest that he has or might have in, and to transfer any right, title or interest he has or might have in the property and assets listed in **Exhibit 1** to the extent necessary to effectuate the sale, transfer or conveyance of the assets and property listed in **Exhibit 1** to this Order.

6. Distribution: The assets and property listed in **Exhibit 1**, including all interest earned on those funds, shall be applied toward satisfying Defendant's restitution obligations under the Criminal Judgment and the obligations of the Receivership Entities. The Court-appointed Receiver may distribute the assets and property listed in **Exhibit 1** to this Order pursuant to a plan of distribution approved by the Court or by agreement of the parties, as set forth in Section I, paragraph 12 above.

### III. MISCELLANEOUS PROVISIONS

1. Return of Property: Pursuant to prior orders of the Court issued in this action, the Court-appointed Receiver has obtained certain documents and other property. The Court-appointed Receiver shall make reasonable efforts, within 60 days from the entry of this Order, to provide to Defendant Armstrong, copies of all papers, books, computer disks, video tapes, and publications in the Receiver's possession, custody or control that may constitute the personal property of Defendant Armstrong or concern or relate to Princeton Economic Institute. In addition, the Receiver shall release to Defendant Armstrong all copyright interest that was held

9

or controlled by the Princeton Economic Institute or one of the Princeton entities in any of the intellectual property formerly used or held by Armstrong or by such entities that are listed on

*PKC* **Exhibit 2** and are in the possession, custody or control of the Receiver.

2. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action in order to assure compliance with this Order and for all other purposed related to this action as set forth herein.

3. Freeze Orders: Without disturbing the Court's findings of fact and conclusions of law in the civil contempt order entered by the Court, the Court's previous orders imposing an asset freeze over, as well as turn over orders relating to, the personal assets of Defendant and those of his family are dissolved insofar as they order injunctive relief. The asset freeze imposed over the assets under the current possession, custody or control of the Court's receiver shall remain in force and effect until such time as the receiver obtains an order from the Court or the parties otherwise agree.

4. Notice: All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

>Notice to Commission:
>Regional Counsel
>Division of Enforcement
>U.S. Commodity Futures Trading Commission
>Eastern Regional Office
>140 Broadway, 19th Floor
>New York, NY 10005
>Telephone (646) 746-9733
>Facsimile (646) 746-9940
>
>Notice to Defendant:
>Thomas Sjoblom, Esq.
>Proskauer Rose
>1001 Pennsylvania Ave., N.W.
>Suite 400 South
>Washington, D.C. 20004

10

>Telephone (202) 416-5805
>Facsimile (202) 416-6899
>
>Notice to Court-appointed Receiver:
>Tancred V. Schiavoni, Esq.
>O'Melveny & Myers, LLP
>Times Square Tower
>7 Times Square
>New York, NY 10036
>Telephone: (212) 326-2000
>Facsimile: (212) 326-2061

5. <u>Change of Address</u>: Upon release from incarceration and to the extent that any provisions of this Order remains unsatisfied, if the Defendant changes his telephone number(s) and/or address(es) at any time, he shall provide written notice of the new number(s) and/or address(es) to the CFTC within ten calendar days thereof for purposes of any notice requirement under this Order.

6. <u>Entire Agreement and Amendments</u>: This Order incorporates all of the terms and conditions of the settlement between the Commission and Defendant. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

7. <u>Invalidation</u>: If any provision of this Order, or the application of any provisions or circumstances is held invalid, the remainder of the Order shall not be affected by the holding.

8. <u>Waiver</u>: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

9. <u>Counterparts and Facsimile Execution</u>: This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Agreement that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

10. Nothing herein shall be construed as permitting or requiring the payment of Armstrong's counsel fees and expenses from the assets held in Receivership, except upon further Order of the Court expressly approving same. *PKC*

SO ORDERED, this 24th day of June, 2007, at New York, New York.

_____
UNITED STATES DISTRICT JUDGE

**THIS DOCUMENT WAS ENTERED ON THE DOCKET ON** _____

12

Consented to and
approved for entry by:

DEFENDANT:

_____
Martin A. Armstrong
Defendant


COUNSEL TO DEFENDANT:

_____
Thomas Sjoblom, Esq.
Proskauer Rose
1001 Pennsylvania Ave., N.W.
Suite 400 South
Washington, D.C. 20004
Telephone (202) 416-5805
Facsimile (202) 416-6899

ATTORNEY FOR PLAINTIFF
U.S. COMMODITY FUTURES
TRADING COMMISSION:

_____
Stephen J. Obie
Regional Counsel / Associate Director
U.S. Commodity Futures Trading
Commission
Division of Enforcement
Eastern Regional Office
140 Broadway, 19th Floor
New York, NY 10005
Telephone (646) 746-9766
Facsimile (646) 746-9940

13

## EXHIBIT No. 1

## SUMMARY OF RECEIVERSHIP ASSETS

### A  CORPORATE ACCOUNTS

1. JP MORGAN CHASE ACCOUNT[1]

    Cresvale International (US) LLC

    Account number 304-868418: $11,011,664.14 (Vol. VII, Ex. 2) less any and all fees, expenses, and/or costs agreed to by the parties and approved by the Court.

2. HSBC ACCOUNTS[2]

    Princeton Economics International Ltd. (Vol. VII, Ex. 3):

| Account # | Sub Account Number | Balance | Account Name |
| --- | --- | --- | --- |
| 610601393 | 45095 | $289,714.60 | PEIL Australia C |
| 610601385 | 46102 | $784,973.88 | PEIL Sub Prop 2 |
| 610601326 | 46098 | $236,388.37 | PEIL Sub Prop 2 |
| 610601300 | 45062 | $911,355.88 | PEIL |
| 610601318 | 45070 | $2,332,802.87 | PEIL Aggressive Fund |
| 610601296 | 45037 | $52,314.38 | PEIL Sub Prop 2 |
| 610601245 | 46155 | $7,693,525.63 | Cresvale Int'l Tokyo |
| 610601237 | 45063 | $328,884.67 | Cresvale Far East |
| 610601466 | 35013251 | $175,344.22 | Princ. Econ. Institute |
| 610601415 | 46053 | $96,640.42 | PEIL Japan |
| 610601407 | 46073 | $669,174.56 | PEI Europe Holdings Ltd |
| 610601504 | 35009876 | $1,542.59 | PEI Asia Sub Acc't |
| 610601482 | 35010064 | $34,271.26 | PEI Aggressive Fund |

---

[1] Statement Balance as of January 31, 2007.

[2] Statement Balance as of March 1, 2007.

|       | 610601474 | 35011327 | $253,086.93     | PEI Sub Prop 2       |
|-------|-----------|----------|-----------------|----------------------|
|       | 610602659 |          | $269.61         | PGM                  |
|       | 610602047 | 21248    | $148,156.99     | Seized Funds [Princ.]|
| Total |           |          | $14,008,446.86  |                      |

3. CITIBANK ESCROW ACCOUNTS

    a. Princeton Economics Institute, Inc.
       Escrow Account No. 230034423: $9,565.24 (Vol. VII, Ex. 4)

    b. Princeton Economics International Ltd.
       Escrow Account No. 230034415: $1,902,883.70 (Vol. VII, Ex. 5)

    c. Princeton Global Management Holdings Ltd.
       Escrow Account No. 230034431: $98,176.65 (Vol. VII, Ex. 6)

## B. CORPORATE NON-CASH ASSETS

1. Real Property (Loveladies, New Jersey)

The deed and settlement documents confirm that the property and an adjoining lot were sold to Princeton Global Management Holdings, Inc. on October 8, 1993 for $1,565,379. These funds were transferred from accounts held by PEIL at Prudential Securities. The adjoining lot was sold in May 1996 for $398,121.59.

2. Interest In Strategic Weather Services Stock

On August 7, 1996, PEIL entered into a Stock Subscription Agreement with Strategic Weather Services, Inc. for the purchase of 200,000 shares of preferred stock in Strategic Weather Services, Inc. The known purchase price of the shares was $1 million. The shares were paid for with funds transferred from PEIL account number 45062 then maintained at RNYSC.

3. Bullion, Coins And Antiquities

These items are identified with particularity in invoices attached to the Declaration of Stamatios Stamoulis, dated December 15, 1999 (Dkt. 68). Attached to the Receiver's Interim Report as Exhibit 8, Volume V is a schedule that lists the antiquities that have been recovered and the original auction prices paid for these items. (See also Volume VII, Ex. 7) Recovered coins and antiquities are held in a vault at Citibank.

## C. MISCELLANEOUS

1. *Automobiles.* Three automobiles, the titles held by Princeton Economic Institute, Inc., but paid for from PEIL account, are held in storage. These vehicles are a BMW 740 IL, a BMW Z3, and a Mitsubishi Eclipse.

2. *Storage Lockers.*

   a. Two storage lockers in Langhorne, Pennsylvania contain office equipment, a safe, and stamp and coin collecting materials leased in the name of Princeton Economics International, Ltd. and Princeton Global Management, Ltd.

   b. Three storage lockers in Trenton, New Jersey contain office equipment, maintained by Princeton Economics International. (Volume VII, Ex. 8).

   c. Two storage lockers in New York, New York contain office equipment and related items recovered from the Princeton Economics Institute, Inc. office:

3. *Computers and Office Equipment.* Computers, furniture and office equipment once located at the offices of Princeton Economic Institute, Inc. were placed into storage.

   > General inventory of decorative items is attached as Exhibit 9 to Volume V to the Receiver's Interim Report.

4. Storage space in New York, New York contain furniture and related items recovered from Corporate Beach House.

   > General inventory attached as Exhibit 7 to Volume V of Receiver's Interim Report, dated January 29, 2001.

16

## Exhibit 2
## Intellectual Property[1]

*[Handwritten margin note, left: "on the basis of the Receiver's good faith belief"]*

*[Handwritten margin note, right: "but nothing herein shall be construed as a warranty that such items are in fact in the Receiver's possession, custody or control."]*

### Certain Specific Items

Armstrong does not know the full extent to which the Receiver has possession, custody or control over copyright materials and intellectual property. This list therefore has been prepared ~~based on Armstrong's reliance on the Receiver's representation~~ that the following are the only such items within the Receiver's possession, custody or control. Thus, the Receiver shall release to Armstrong or his counsel all copyright or other intellectual property interests in the following property: *[handwritten insert: "to the extent they are in the Receiver's possession, custody or control."]*

1. <u>Computer Programs</u>

   - Princeton "AI" computer model for short term, medium term and long term economic and political forecasts
   - All other computer programs that previously were held or controlled by Armstrong, the Princeton Economic Institute, or one of the other Princeton-related entities that are contained on any computers, computer servers, diskettes or other storage receptacles (in either electronic, hard-copy or other format) that are within the possession, custody or control of the Receiver.

2. <u>Trade names</u>

   - Princeton Economics Institute, Inc.
   - Princeton World Capital Market Review
   - www.PEI-INTL.com;
   - www.princetoneconomics.com
   - www.martinarmstrong.com

3. <u>Newsletters and Reports</u>

   - PEI Newsletters
   - Armstrong Reports
   - Notes, lectures, articles, etc. that previously were listed and available on www.princetoneconomics.com

---

[1] The inclusion of an item on this list does not constitute a representation that a copyright, trademark or other proprietary interest exists or is held by the Princeton companies. Rather, the list merely sets out that whatever rights to use might exist, if any, at the time of the entry of the order shall be conveyed.

4.  Seminar Materials (Videos and Handouts)

- Martin Armstrong Conference, Vancouver 1994
- Princeton Seminar, Imperial Hotel, 1995
- Princeton Cycles Conference 1996
- Anaheim 1997
- 1998 Martin Armstrong Conference, Vancouver
- 1999 World Outlook Financial Conference, Vancouver