```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-31-09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Commodity Futures Trading Commission, )
                                      )
                    Plaintiff,        )
                                      )      99 CV 9669 (PKC)
              v.                      )
                                      )
Princeton Global Management Ltd., Princeton )
Economics International Ltd., and Martin A. )
Armstrong,                            )
                                      )
                    Defendants.       )
_____)

[PROPOSED] **JUDGMENT AND CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS PRINCETON GLOBAL MANAGEMENT LTD. AND PRINCETON ECONOMICS INTERNATIONAL LTD.**

On September 13, 1999, Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "CFTC") filed a Complaint for a permanent injunction and other relief pursuant to Section 6c of the Commodity Exchange Act ("Act"), as amended, 7 U.S.C. §13a-1 (1994), against Princeton Global Management Ltd. ("PGM") and Princeton Economics International Ltd. ("PEI") (collectively, "Defendants"), and Martin A. Armstrong.

## I. CONSENTS AND AGREEMENTS

1.  To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits or any further judicial proceedings, the CFTC and the Defendants consent to the entry of this *Judgment and Consent Order of Permanent Injunction and Other Equitable Relief Against Defendants Princeton Global Management Ltd. and Princeton Economics International Ltd.* ("Order").

2.  Defendants agree that they have read this Order and agree to this Order voluntarily and that no promise or threat has been made by the CFTC, or any member, officer, agent or representative

1

thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

3. Defendants acknowledge service of the Summons and Complaint in this action on them.

4. Defendants admit that this Court has jurisdiction over them and the subject matter of this action.

5. Defendants admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1.

6. Defendants waive: (a) any and all claims that they may possess against the CFTC as a result of any past, present, or accrued cause of action under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Commission's Regulations, 17 C.F.R. §§148.1, *et seq.* (2009); (b) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing any other relief; (c) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act, Pub. L. 104-121, Subtitle B, Sections 231-223, 110 Stat. 862-63 (1996), as amended by Pub. L. No. 110-28, 121 Stat. 112 (2007), relating to or arising from this action; (d) any and all claims that they possess under any other provision of law to pursue reimbursement of attorneys' fees or other fees, expenses, or costs relating to or arising from the action; (e) all rights of appeal in this action; and (f) the entry of findings of fact and conclusions of law.

7. Defendants agree to provide immediate notice to this Court and the CFTC by certified mail of any bankruptcy proceeding filed by, on behalf of, or against either of them.

8. Defendants agree that neither they nor any of their agents, employees, contractors, representatives or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the

Complaint or this Order is without factual basis; provided, however, that nothing in this provision shall affect Defendants' (a) testimonial obligations; or (b) right to take legal positions in other proceeding to which the CFTC is not a party. Defendants shall undertake all steps necessary to ensure that all of their agents, employees, contractors, representatives and attorneys understand and comply with this agreement.

9. By consenting to this Order, Defendants neither admit nor deny the allegations contained in the Complaint except as to jurisdiction and venue, which they admit..

10. Defendants waive service of this Order and agree that entry of this Order by the Court and the filing with the Clerk of the Court will constitute notice to Defendants of its terms and conditions.

11. Defendants agree that they will not oppose the enforcement of this Order on the grounds, if any exist, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waive any objection based thereon.

12. Defendants agree that the CFTC may present this Order to the Court for signature and entry without further notice.

## II. ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

The Court, being fully advised, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court, therefore, directs the entry of permanent injunctions and ancillary equitable relief pursuant to Sections 6c and 6d of the Act, 7 U.S.C. §§ 13a-1, as set forth herein.

**NOW THEREFORE, IT IS ORDERED THAT:**

1.  Defendants, in or in connection with any order to make, or the making of, any contract of sale of any commodity

    > A. in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, or
    >
    > B. for any person for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,

are each permanently restrained, enjoined and prohibited from directly or indirectly: cheating or defrauding or attempting to cheat or defraud the other person; willfully making or causing to be made to the other person any false report or statement or willfully entering or causing to be entered for the other person any false record; and/or willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of subparagraph (B) above, with the other person in violation of Section 4b(a) of the Act as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008), § 13102, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 6b(a); and

2.  Defendants, while operating as a commodity pool operator, as that term is defined by Section 1a(5) of the Act, 7 U.S.C. § 1a(5) ("CPO"), and/or commodity trading advisor, as that term is

4

defined by Section 1a(6) of the Act, 7 U.S.C. § 1a(6) ("CTA"), are each permanently restrained, enjoined and prohibited from directly or indirectly making use of the mails or any means or instrumentality of interstate commerce to:

    A. solicit, accept or receive funds from members of the public to participate in a commodity pool formed and operated for the purpose of trading commodity futures contracts on contract markets without being registered with the Commission as a CPO and/or CTA, in violation of Section 4m(1) of the Act, 7 U.S.C. §6m(1) (2006); and/or

    B. employ any device, scheme or artifice to defraud any client or participant or prospective client or participant or engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or participant or prospective client or participant in violation of Sections 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§6$o$(1)(A) and (B) (2006).

3.     Defendants are each permanently restrained, enjoined, and prohibited from engaging, directly or indirectly, in:

    A. trading on or subject to the rules of any registered entity, at that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

    B. entering into any transactions involving commodity futures, options on commodity futures, and/or commodity options, as that term is defined in Regulation 32.1(b)(1) ("commodity options"), for their own personal account or for any account in which they have a direct or indirect interest

    C. having any commodity futures, options on commodity futures and/or commodity options traded on their behalf;

    D. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, and/or commodity options;

    E. soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, and/or commodity options;

    F. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission

    G. acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission; and

      H. any business activity related to trading commodity futures, options on commodity futures, and/or commodity options.

4.     Notwithstanding the foregoing provision in paragraph 3, Defendants shall be permitted to:

      A. engage in activity as a commodity trading advisor, as that term is defined by Section 1a(6) of the Act, 7 U.S.C. § 1a(6) ("CTA"), provided that they do not engage in any of the activities proscribed by Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

      B. act as a principal, agent or any other officer or employee of any CTA that does not engage in any of the activities proscribed by Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

5.     The injunctive provisions of this Order shall be binding upon Defendants, upon any person insofar as he or she is acting in the capacity of agent, servant, employee or attorney of Defendants, and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Defendants.

**IT IS FURTHER ORDERED THAT:**

6.     <u>Restitution</u>: Defendants shall pay restitution by transferring to the Court-appointed Receiver any and all right, title and interest that they possess, if any, in the property and assets listed in **Exhibit 1** to this Order, and they shall hereafter forever waive any claim against such property and assets listed in **Exhibit 1** to this Order. The property and assets listed in **Exhibit 1** shall be applied and distributed in accordance with the procedures set forth in paragraph 6, below.

7.     <u>Cooperation</u>: Defendants shall cooperate with the CFTC and the Court-appointed Receiver by executing any deeds, affidavits and other documents to disclaim any right, title or interest that they have or might have in, and to transfer any right, title or interest they have or might have in the property and assets listed in **Exhibit 1** to the extent necessary to effectuate the sale, transfer or conveyance of the assets and property listed in **Exhibit 1** to this Order.

8. <u>Distribution</u>: The assets and property listed in **Exhibit 1**, including all interest earned on those funds, shall be distributed by the Court-appointed Receiver pursuant to the Plan of Final Distribution, approved by the Court on September 29, 2008.

### III. MISCELLANEOUS PROVISIONS

1. <u>Authority</u>: Alan Cohen, Esq., as Temporary Receiver appointed pursuant to this Court's Order dated September 13, 1999, as clarified by Order dated January 6, 2000 (the "Receiver") is hereby authorized, empowered and directed to sign and submit this Order on behalf of the Defendants and to take all necessary and appropriate acts to carry out and implement the Order in accordance with its terms without further order of the Court.

2. <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this action in order to assure compliance with this Order and for all other purposed related to this action as set forth herein.

3. <u>Freeze Orders</u>: Without disturbing the Court's findings of fact and conclusions of law in the civil contempt order entered by the Court, the Court's previous orders imposing an asset freeze over, as well as turn over orders relating to, the assets of Defendants are lifted insofar as they order injunctive relief. The asset freeze imposed over the assets under the current possession, custody or control of the Receiver shall remain in force and effect until such time as the Receiver obtains an order from the Court or the parties otherwise agree.

4. <u>Notice</u>: All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

       Notice to Commission:
       Regional Counsel
       Division of Enforcement
       U.S. Commodity Futures Trading Commission
       Eastern Regional Office
       140 Broadway, 19th Floor

       New York, NY 10005
       Telephone (646) 746-9733
       Facsimile (646) 746-9940

       Notice to Court-appointed Receiver:
       Tancred V. Schiavoni, Esq.
       O'Melveny & Myers, LLP
       Times Square Tower
       7 Times Square
       New York, NY 10036
       Telephone: (212) 326-2000
       Facsimile: (212) 326-2061

5.    Change of Address: If Defendants change their telephone number(s) and/or address(es) at any time, they shall provide written notice of the new number(s) and/or address(es) to the CFTC within ten calendar days thereof for purposes of any notice requirement under this Order.

6.    Entire Agreement and Amendments: This Order incorporates all of the terms and conditions of the settlement between the Commission and Defendants. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

7.    Invalidation: If any provision of this Order, or the application of any provisions or circumstances is held invalid, the remainder of the Order shall not be affected by the holding.

8.    Waiver: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

9.    Counterparts and Facsimile Execution: This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by

8

facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Agreement that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

**SO ORDERED**, this ___30th___ day of ___July___, 2009, at New York, New York.

_____
UNITED STATES DISTRICT JUDGE

Consented to and
approved for entry by:
RECEIVER:                                         ATTORNEYS FOR PLAINTIFF
                                                  U.S. COMMODITY FUTURES
                                                  TRADING COMMISSION:

_____
Alan M. Cohen, Esq.

COUNSEL TO RECEIVER:                              Steven Ringer
                                                  Chief Trial Attorney
                                                  Commodity Futures Trading Commission
                                                  Division of Enforcement
_____                   Eastern Regional Office
Tancred Schiavoni, Esq.                           140 Broadway, 19th Floor
O'Melveny & Myers, LLP                            New York, NY 10005
Times Square Tower                                Telephone (646) 746-9760
7 Times Square                                    Facsimile (646) 746-9940
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

# EXHIBIT No. 1

## SUMMARY OF RECEIVERSHIP ASSETS

A. **Corporate Cash Accounts**

1. *Cash held in U.S. bank and brokerage accounts of U.S. entities:*

| Entity | Balance as of Sept. 30, 2008 |
|---|---|
| Princeton Economic International, Ltd. | $5,305,846 |
| Princeton Global Management, Ltd. (cash held at HSBC) | 153,134 |
| Princeton Economic Institute, Inc. (Acct. #230034423 at Citibank) | 9,788 |
| Princeton Economics Institute, Inc. (Acct. #35013251 at HSBC) | 191,321 |
| Princeton Global Management Holdings, Inc. | 7,657 |
| Cresvale International (US) LLC | 20,035,158 |
| **Subtotal** | **25,702,905** |

2. *Cash held in U.S. bank and brokerage accounts denominated in the name of various PEIL companies:*

| Entity | Balance as of Sept. 30, 2008 |
|---|---|
| PEI Aggressive Fund | 2,454,661 |
| **Subtotal** | **2,454,661** |
| **Total Cash Assets held in U.S. by the Receiver:** | **28,157,565** |

11

**B.     Corporate Non-Cash Assets**

   *1. Estimated values for non-cash assets held
      by the Receiver.[1]*

| Non-Cash Asset | Balance as of Sept. 30, 2008 |
|---|---|
| Beach House (Loveladies, New Jersey)[2] | $2,500,000 |
| Strategic Weather Services Stock (at cost)[3] | 1,000,000 |
| Rare coins (2007 estimate)[4] | 1,100,000 |
| Antiquities (purchase prices)[5] | 497,650 |
| Miscellaneous (2007 estimate)[6] | 250,000 |
| **Total Non-Cash Assets** | 5,347,650 |
| **TOTAL ASSETS HELD IN U.S. BY THE RECEIVER** | **33,505,215** |

---

[1] Amounts as disclosed in Report of Receiver in Response to March 2, 2007 Directive of the Court. Note that values of assets are based solely on estimates and have not been derived based upon any appraisal or other type of formal valuation.

[2] The deed and settlement documents confirm that the property and an adjoining lot were sold to Princeton Global Management Holdings, Inc. on October 8, 1993 for $1,565,379. These funds were transferred from accounts held by PEIL at Prudential Securities. The adjoining lot was sold in May 1996 for $398,121.59.

[3] On August 7, 1996, PEIL entered into a Stock Subscription Agreement with Strategic Weather Services, Inc. for the purchase of 200,000 shares of preferred stock in Strategic Weather Services, Inc. The known purchase price of the shares was $1 million. The shares were paid for with funds transferred from PEIL account number 45062 then maintained at RNYSC.

[4] The coins and antiquities are identified with particularity in invoices attached to the Declaration of Starnatios Stamoulis, dated December 15, 1999 (Dkt. 68). Attached to the Receiver's Interim Report as Exhibit 8, Volume V is a schedule that lists the antiquities that have been recovered and the original auction prices paid for these items. (See also Volume VII, Ex. 7.) Recovered coins and antiquities are held in a vault at Citibank.

[5] Id.

[6] Includes three automobiles and storage lockers containing furniture, office equipment, records maintained by PEIL, an empty safe, stamp and coin-collecting material:

   Automobiles. The titles of the three automobiles are held by Princeton Economic Institute, Inc., but paid for from PEIL account, are held in storage. These vehicles are a BMW 740 IL, a BMW 23, and a Mitsubishi Eclipse.
   Storage Lockers.
   (a) Two storage lockers in Langhorne, Pennsylvania contain office equipment, a safe, and stamp and coin collecting materials leased in the name of Princeton Economics International, Ltd. and Princeton Global Management, Ltd.
   (b) Three storage lockers in Trenton, New Jersey contain office equipment, maintained by Princeton Economics International. (See Volume VII, Ex. 8.)
   (c)Two storage lockers in New York, New York contain office equipment and related items recovered from the Princeton Economics Institute, Inc. office.
   1. Computers and Office Equipment. Computers, furniture and office equipment once located at the offices of Princeton Economic Institute, Inc. were placed into storage.
   2. General inventory of decorative items is attached as Exhibit 9 to Volume V to the Receiver's Interim Report.
   (d) Storage space in New York contains furniture and related items recovered from the Corporate Beach House. General inventory attached as Exhibit 7 to Volume V of Receiver's Interim Report, dated January 29, 2001.
   Software copyrights. Value unknown.

12

## CERTIFICATE OF SERVICE

I, David C. Marden, hereby certify that on July 13, 2009, I caused true and correct copies of the (i) Notice of Motion for Approval the [Proposed] Judgment and Consent Order of Permanent Injunction and Other Equitable Relief Against the Corporate Defendants (ii) Memorandum of Law in Support of the Receiver's Motion for Approval of the [Proposed] Judgment and Consent Order of Permanent Injunction and Other Equitable Relief Against the Corporate Defendants; and (iii) [Proposed] Judgment and Consent Order of Permanent Injunction and Other Equitable Relief Against the Corporate Defendants to be served by E-mail and First Class U.S. Mail upon the counsel and parties listed on the attached service lists.

_____
David C. Marden (DM 0207)

# SERVICE LIST

Thomas V. Sjoblom, Esq.
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533
Telephone: (202) 416-6800
E-mail: tsjoblom@proskauer.com
*Counsel for Defendant Martin A. Armstrong*

Steven Ringer, Esq.
U.S. Commodity Futures Trading Commission
140 Broadway
New York, NY 10005
Telephone: (646) 746-9760
E-mail: SRinger@cftc.gov
*Counsel for Plaintiff Commodity Futures Trading Commission*

David Stoelting, Esq.
U.S. Securities and Exchange Commission
Northeast Regional Office
Three World Financial Center
New York, NY 10281
Telephone: (212) 336-0174
E-mail: StoeltingD@sec.gov
*Counsel for Plaintiff Securities and Exchange Commission*

# SERVICE LIST FOR NOTEHOLDERS

David Haller, Esq.
Covington & Burling
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1103
Fax: (212) 841-1010
E-mail: dhaller@cov.com
*Counsel for Alps Electric Co., Ltd.;
Alps Credit Co., Ltd.; and
Alps Accounting Center Co., Ltd.*

Steven R. Schindler, Esq.
Schindler Cohen & Hochman LLP
100 Wall Street, 15th Floor
New York, New York 10005
Tel: (212) 277-6310
Fax: (212) 277-6333
E-mail: sschindler@schlaw.com
*Counsel for Amada Co. (Amada v. Republic, et al.)*

J. Peter Coll, Jr., Esq.
Morton Dubin, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10019
Tel: (212) 506-3790
Fax: (2120 506-5151
E-mail: pcoll@orrick.com
        mdubin@orrick.com
*Counsel for Asatsu-DK Inc., Itoki Crebio Corp., Kissei Pharmaceutical Co. Ltd., Mazuren Co. Ltd., and SMC Corporation*

Daniel S. Savrin, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 318-7803
E-mail: savrinds@bingham.com
*Counsel for Ozawa Denki Koji Group*

Reid M. Figel, Esq.
Andrew C. Shen, Esq.
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
E-mail: rfigel@khhte.com
        ashen@khhte.com
*Counsel for Gun-ei Chemical (Gun-ei Chemical v. Princeton, et al.)*

Richard F. Lawler, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-3462
Fax: (212) 351-3131
E-mail: rlawler@winston.com
*Counsel for Starzen Company*

Michael S. Kraut, Esq.
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
E-mail: mkraut@morganlewis.com
*Counsel for Nichimen Europe, PLC*

Steven E. Fineman, Esq.
Lieff Cabraser Heimann & Bernstein LLP
780 3rd Avenue, 48th Floor
New York, New York 10017
Tel: (212) 355-9500
Fax: (212) 355-9592
E-mail: sfineman@lchb.com
*Counsel for Kofuku Bank Ltd., Namihaya Bank Ltd. and Kita-Hyogo Shinyo Kumiai*

3

G. Robert Gage, Jr., Esq.
Laura-Michelle Rizzo, Esq.
Gage, Spencer & Fleming LLP
410 Park Avenue
New York, New York 10022
Tel: (212) 768-4900
Fax: (212) 768-3629
E-mail:  grgage@gagespencer.com
         lrizzo@gagespencer
*Counsel for Yakult Honsha Co., Ltd.*

George Hinckley, Esq.
Traiger & Hinckley LLP
501 Fifth Avenue
#506
New York, New York 10017-7838
Tel:  (212) 759-4933
Fax: (212) 656-1531
E-mail: grh@hinckley.org
*Counsel for Kunio Kanzawa and Akio Maruyama*

Peter C. Harrar, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue, 10th Floor
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
E-mail: harrar@whafh.com
*Counsel for PG Star Ltd.*

Greg A. Danilow, Esq.
Stephen A. Radin, Esq.
Seth Goodchild, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8182
Fax: (212) 310-8007
E-mail:  greg.danilow@weil.com
         stephen.radin@weil.com
         seth.goodchild@weil.com
*Counsel for Chudenko Group (Chudenko v. Republic, et al.)*

Joseph Sternberg, Esq.
Labaton Sucharow LLP
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
E-mail: JSternberg@labaton.com
*Counsel for Koei Shoji, Ltd.*

Jonathan I. Blackman, Esq.
David E. Brodsky, Esq.
Avi E. Luft, Esq.
Michael Byars, Esq.
Laésha J. Smith, Esq.
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, New York  10006
Tel: (212) 225-2000
Fax: (212) 225-3999
E-mail:  jblackman@cgsh.com
         dbrodsky@cgsh.com
         aluft@cgsh.com
         mbyars@cgsh.com
         lsmith@cgsh.com
*Counsel for HSBC and Republic*

4